Filed 9/11/25  P. v. Hernandez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>NELSON HERNANDEZ,<br><br>      Defendant and Appellant. | B340029<br><br>(Los Angeles County<br>Super. Ct. No. NA053889) |

APPEAL from an order of the Superior Court of Los Angeles County, Chet L. Taylor, Judge.  Affirmed.

Moriah S. Radin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, David A. Wildman, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Nelson Hernandez appeals from the superior court's order denying his petition for recall and resentencing under Penal Code section 1170, subdivision (d)(1).[1]  After a jury convicted him in 2003 of first degree murder and found true firearm and gang allegations, the trial court sentenced Hernandez, who was 17 years old when he committed the crime, to a prison term of 60 years to life.  We affirmed Hernandez's conviction on direct appeal, but struck the gang enhancement, leaving him with a sentence of 50 years to life.

In 2024 Hernandez filed a petition under section 1170, subdivision (d)(1), which authorizes defendants who were under 18 years old when they committed their crimes and who were sentenced to life without the possibility of parole (which some courts refer to as LWOP) to petition for resentencing.  Hernandez argues the superior court erred in denying his petition because, though he was not sentenced to a prison term of life without the possibility of parole, his sentence of 50 years to life is the functional equivalent of life without the possibility of parole.  We recently rejected that argument in *People v. Munoz* (2025) 110 Cal.App.5th 499, review granted June 25, 2025, S290828 (*Munoz*).  We conclude that, under our controlling (at least in this division and until the Supreme Court decides the issue) decision in *Munoz*, a prison sentence of 50 years to life is not the functional equivalent of life without the possibility of parole. Therefore, we affirm.

---

[1]      Section references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *A Jury Convicts Hernandez of Murder, the Trial Court Sentences Him, and This Court Affirms*

In 2002 Hernandez, a member of a criminal street gang, approached Marilyn West as she walked outside her apartment building to her car.  West's boyfriend, John McMillian, was waiting for her in the car.  Hernandez approached the car, opened the passenger side door, and repeatedly asked McMillian (who was sitting in the driver's seat) "whether he gangbanged and where he was from."  McMillian and West denied McMillian was a gang member.  Hernandez shot and killed McMillian anyway. (*People v. Hernandez* (Nov. 1, 2004, B170634) [nonpub opn.].)

A jury convicted Hernandez of first degree murder (§ 187, subd. (a)) and found true firearm (§ 12022.53, subds. (b)-(d)) and gang (§ 186.22, subd. (b)(1)) allegations.  The trial court sentenced Hernandez to a prison term of 60 years to life: 25 years to life on the murder conviction, plus 25 years to life for the firearm enhancement and 10 years for the gang enhancement. We affirmed Hernandez's conviction, but held the trial court erred in imposing the 10-year gang enhancement.  We modified the judgment to strike that enhancement and affirmed the judgment as modified.  (*People v. Hernandez*, *supra*, B170634.)

B.  *Hernandez Files a Petition Under Section 1170, Subdivision (d)(1), and the Superior Court Denies It*

In 2024, after serving more than 15 years of his sentence, Hernandez filed a petition for resentencing under section 1170, subdivision (d)(1).  The superior court denied the petition, ruling that, because section 3051 guarantees Hernandez "an

opportunity for parole after a set period of incarceration, the sentence is not the functional equivalent" of a sentence of life without the possibility of parole.  Hernandez timely appealed.

## DISCUSSION

Hernandez argues that his sentence of 50 years to life is a "de facto juvenile offender LWOP sentence" and that he is entitled to relief under section 1170, subdivision (d)(1).  Neither contention has merit.

A.  *Section 1170, Subdivision (d)(1), and Section 3051*

Section 1170, subdivision (d)(1)(A), provides (with certain exceptions not relevant here):  "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."  (See *In re Kirchner* (2017) 2 Cal.5th 1040, 1049-1050; *Munoz, supra*, 110 Cal.App.5th at p. 504, review granted.)  As we recently explained, the Legislature enacted the predecessor to section 1170, subdivision (d)(1), in response to significant developments in the law regarding juvenile offender sentencing.  (*Munoz*, at pp. 504-505.)  In several cases the United States Supreme Court recognized the lesser culpability of juveniles compared to adults and (relatedly) constitutional limitations on juvenile punishment (specifically, on sentences of death and life without the possibility of parole) under the Eighth Amendment.  (*Ibid.*; see *Graham v. Florida* (2010) 560 U.S. 48, 74-75 ["for a juvenile offender who did

4

not commit homicide, the Eighth Amendment forbids the sentence of life without parole"]; *Roper v. Simmons* (2005) 543 U.S. 551, 569, 575 [because of the differences between juveniles and adults, "the death penalty cannot be imposed upon juvenile offenders"]; see also *Miller v. Alabama* (2012) 567 U.S. 460, 479, 489 [for homicide offenses "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders"].)  In *People v. Caballero* (2012) 55 Cal.4th 262 the California Supreme Court extended the Eighth Amendment analysis to include juvenile offenders in nonhomicide cases where the court imposes "the functional equivalent of a life without parole sentence," i.e., "a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy." (*Id*. at p. 268; see *ibid*. [sentence of 110 years to life was functionally equivalent to life without the possibility of parole].)

In addition to enacting section 1170, subdivision (d)(1), the Legislature enacted section 3051 to bring California sentencing law in line with these legal developments.  Section 3051 requires parole hearings for most youth offenders incarcerated for crimes they committed before the age of 25, regardless of the sentence originally imposed.  Juvenile offenders who are sentenced to life without the possibility of parole and who, like Hernandez, were under the age of 18 at the time of their offenses, are eligible for youth offender parole hearings after their 25th year of incarceration.  (§ 3051, subds. (b) & (h); see *People v. Hardin* (2024) 15 Cal.5th 834, 845.)

B.   *Rules of Statutory Construction and Standard of Review*

"'Statutory construction begins with the plain, commonsense meaning of the words in the statute, "because it is generally the most reliable indicator of legislative intent and purpose."'" [Citation.]  A statute is not to be read in isolation, but construed in context and "'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.'" [Citation.]  "'If there is no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said, and we need not resort to legislative history to determine the statute's true meaning."'" (*People v. Heard* (2022) 83 Cal.App.5th 608, 622-623 (*Heard*); accord, *Munoz, supra,* 110 Cal.App.5th at p. 506, review granted.)

"The proper interpretation of a statute is a question of law subject to de novo review.  [Citation.]  When the trial court applies its factual findings under a statute, we review the factual findings for substantial evidence; but the interpretation and application of the statute to those factual findings is a question of law subject to de novo review." (*People v. Harring* (2021) 69 Cal.App.5th 483, 495; see *Munoz, supra,* 110 Cal.App.5th at pp. 506-507, review granted; *Heard, supra,* 83 Cal.App.5th at p. 622.)

C.   *Hernandez Is Not Eligible for Relief Under Section 1170, Subdivision (d)(1), and 50 Years to Life Is Not the Functional Equivalent of Life Without the Possibility of Parole*

"Section 1170, subdivision (d)(1), applies to juvenile offenders sentenced to life without the possibility of parole; it

does not apply to any other group of defendants." (*Munoz, supra*, 110 Cal.App.5th at p. 507, review granted; see *People v. Ortega* (2025) 111 Cal.App.5th 1252, 1261 [defendant sentenced to a prison term of 42 years to life "was *not* 'sentenced to imprisonment for life without the possibility of parole'"]; *People v. Superior Court* (*Valdez*) (2025) 108 Cal.App.5th 791, 800 ["subdivision (d) of section 1170 limits relief to juvenile defendants who were either originally sentenced to LWOP or resentenced to LWOP upon petitioning for resentencing under section 1170(d)(1)"]; *Heard, supra*, 83 Cal.App.5th at p. 626 ["section 1170, subdivision (d)(1)(A), limits eligibility to petition for recall and resentencing to juvenile offenders sentenced to an explicitly designated life without parole term"].) Notwithstanding the clear statutory language, Hernandez argues he is eligible for relief on equal protection grounds because his sentence of 50 years to life is the "functional equivalent" of a sentence of life without the possibility of parole.

Hernandez urges us to construe section 1170, subdivision (d)(1), to apply not only to youth offenders sentenced to life in prison without the possibility of parole, but also to youth offenders sentenced to long prison terms. He cites three cases where courts have reached that conclusion on equal protection grounds by incorporating the "functional equivalent" concept from Eighth Amendment case law. (See *Heard, supra*, 83 Cal.App.5th at pp. 633-634 [section 1170, subdivision (d)(1), violates the equal protection rights of juveniles sentenced to the functional equivalent of life without the possibility of parole because the Legislature had no rational basis for making them ineligible, but making juveniles sentenced to life without the possibility of parole eligible, for relief]; see also *People v. Bagsby*

(2024) 106 Cal.App.5th 1040, 1054-1063 [reaffirming *Heard*]; *People v. Sorto* (2024) 104 Cal.App.5th 435, 454 [following *Heard* and concluding there was no rational basis to treat differently "explicit LWOP offenders and functionally equivalent LWOP offenders"].) In *Munoz* we rejected the same argument Hernandez makes here, in part because the sentences involved in those cases were much longer than the defendant's sentence of 50 years to life in *Munoz* (and Hernandez's sentence here). (See *Bagsby*, at p. 1047 [67 years, plus 40 years to life]; *Sorto*, at p. 440 [10 years, plus 130 years to life]; *Heard*, at p. 629 [23 years, plus 80 years to life]; see also *People v. Thompson* (2025) 112 Cal.App.5th 1058, 1072 & fn. 4] [agreeing with *Munoz*].) Hernandez's argument fails for the same reason: A sentence of 50 years to life is not the functional equivalent of life without the possibility of parole. (See *Munoz*, *supra*, 110 Cal.App.5th at pp. 507-508, review granted.) Moreover, Hernandez, like the defendant in *Munoz*, and unlike the defendants in *Bagsby*, *Sorto*, and *Heard*, "will have a realistic opportunity to obtain release from prison during his expected lifetime" (*id*. at p. 508) because he will be 67 years old (assuming he does not obtain relief under section 3051 sooner than that) when he becomes eligible for parole under his current sentence. (Cf. *People v. Caballero*, *supra*, 55 Cal.4th at p. 268 [juvenile offender serving a minimum sentence of 110 years would be denied a "'realistic opportunity to obtain release'"].)

Hernandez also argues the legislative history of section 1170 supports his proposed interpretation of the statute. But courts use legislative history to construe a statute only when a statute is ambiguous. (*People v. Walker* (2024) 16 Cal.5th 1024, 1032; *People v. Cochran* (2002) 28 Cal.4th 396, 401.) As

8

discussed, section 1170, subdivision (d)(1), is clear and unambiguous: It applies to "a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole . . . ." Hernandez is not such a defendant.

## DISPOSITION

The order denying Hernandez's petition under section 1170, subdivision (d)(1), is affirmed.

SEGAL, Acting P. J.

I concur:

STONE, J.

9

FEUER, J., Dissenting

The majority concludes that Hernandez's 50-years-to-life sentence is not the functional equivalent of a sentence of life without the possibility of parole based on its assumption that Hernandez, like the defendant in *Munoz, supra*, 110 Cal.App.5th 499, review granted, "'will have a realistic opportunity to obtain release from prison during his expected lifetime'" because he will be 67 years old when he becomes eligible for parole. (Maj. opn. *ante*, at p. 8, quoting *Munoz*, at p. 508.) For the reasons I stated in my dissent in *Munoz*, I disagree.

As I explained in my dissent, "50-years-to-life sentences for juvenile offenders, which will result in a substantial percentage of juvenile offenders dying before their parole eligibility dates set at sentencing, and others being released toward the end of their lifetimes with no realistic opportunity to become productive members of society, are the functional equivalent of explicit LWOP sentences for purposes of an equal protection challenge." (*Munoz, supra*, 110 Cal.App.5th at p. 519, review granted (dis. opn. of Feuer, J.).)

Further, "[i]n light of the Legislature's intent in enacting section 1170(d)(1) to address juvenile offenders' capacity to change and be rehabilitated, it is not a "'realistically conceivable legislative purpose'" . . . that the Legislature intended to limit resentencing relief to juvenile offenders who commit the most heinous crimes and would with certainty otherwise die in prison, and not to the substantial fraction of juvenile offenders sentenced to 50 years to life who also will die before they are eligible for release, or the fraction of juvenile offenders who, after serving most of their lifetimes in prison, will have no realistic

opportunity to reintegrate into society or be incentivized to become responsible individuals." (*Munoz, supra*, 110 Cal.App.5th at p. 522, review granted (dis. opn. of Feuer, J.), quoting *People v. Williams* (2024) 17 Cal.5th 99, 125.)  Thus, denial of resentencing relief under section 1170(d)(1) to juvenile offenders sentenced to functionally equivalent sentences of 50 years or more to life violates the constitutional guarantee of equal protection.

Accordingly, I respectfully dissent.

FEUER, J.

2